# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Three Electronic Devices | )<br>)<br>)<br>)<br>) |

Case No. 1:17mj376

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Electronic devices, more fully described in Attachment A, attached hereto and made a part hereof.

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

Evidence of, instrumentalities used in committing, and fruits of the crimes of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(a)(5)(B), as further described in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(2)(a) | Receiving Child Pornography |
| 18 U.S.C. § 2252A(a)(5)(B) | Possessing or Accessing with Intent to View Child Pornography |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

M.C. Glenn Covington
*Applicant's signature*

MC Glenn Covington /SA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/20/17

*Judge's signature*

City and state: Greensboro, North Carolina

L. Patrick Auld, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## ITEMS TO BE SEARCHED

The devices to be searched are the following:

1. Black i-Phone 7 Model A1778 no visible serial number;

2. Silver Samsung Galaxy SD7 Edge bearing serial number R58J327BJNN;

3. Apple Silver MacBook Air bearing serial number C1MSJDCNH3QD;

The Devices are currently in the custody of the United States Marshals Service in Greensboro, North Carolina.

# ATTACHMENT B

## ITEMS TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(a)(5)(B):

1. For all items listed in Attachment A (hereinafter, "DEVICES"):

    a. evidence of who used, owned, or controlled the DEVICES in and around the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b. evidence of software that would allow others to control the DEVICES, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c. evidence of the lack of such malicious software;

    d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use,

1

and events relating to the crimes under investigation and to the computer user;

    e. evidence of the attachment to the DEVICES of other storage devices or similar containers for electronic evidence;

    f. evidence of programs (and associated data) that are designed to eliminate data from the DEVICES;

    g. evidence of the times the DEVICES was used;

    h. passwords, encryption keys, and other access devices that may be necessary to access the DEVICES;

    i. documentation and manuals that may be necessary to access the DEVICES or to conduct a forensic examination of the DEVICES;

    j. records of or information about Internet Protocol addresses used by the DEVICES and software that obfuscates Internet Protocol addresses;

    k. records of or information about the DEVICES's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses, revealing an interest in child exploitation content; and

2.     Child pornography and child erotica.

3. Records, information, and items relating to violations of the statutes described above in the form of:

    a. records and information constituting or revealing the sexual exploitation of any minor;

    b. records and information constituting or revealing sexual interest in any minor;

    c. records and information constituting or revealing the identity and age of any minor victim;

    d. records and information constituting or revealing participation in groups or communication with others that provide or make accessible child pornography;

    e. records and information revealing the use of the applications ▮▮▮ and Skype; and

    f. records and information revealing the use and identification of remote computing services such as email accounts or cloud storage;

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data).

3

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, M.C. Glenn Covington, a Special Agent (SA) with Homeland Security Investigations (HSI) being duly sworn, depose and state as follows:

## INTRODUCTION

1.    I am a Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), currently assigned to Cary, North Carolina and have been so employed since October 2009. I am responsible for investigations involving the production, importation, advertising, receipt, and distribution of child pornography which occur in the Middle District of North Carolina. I was previously employed as a United States Postal Inspector for five years in Richmond, Virginia and was responsible for child exploitation investigations involving the United States Mail. I have participated in over 100 child pornography investigations. I have received training in the area of child pornography and child sexual exploitation as well as specialized instruction on how to conduct investigations of child sexual exploitation and child pornography crimes through the United States Postal Inspection Service, the Federal Bureau of Investigation and the Department of Justice. I have also received specialized training from the Internet Crimes Against Children Task Force seminars and

1

at the Dallas, Texas Advocacy Center's Crimes Against Children Training Conference. Moreover, I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C. §§ 2252 and 2252A, and I am authorized by law to request search and arrest warrants.

2.     This affidavit is being submitted in support of an application for a warrant to search the property described in Attachment A of this affidavit for contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252A, which items are more specifically described in Attachment B of this affidavit.

3.     I am investigating the activities of Keith Charles PEELE for the receipt, access with intent to view, and possession of child pornography, and I have probable cause to believe that contraband and evidence of a crime, fruits of a crime, and instrumentalities of violations of 18 U.S.C. § 2252A(a)(2)(A) (receipt of child pornography), and 18 U.S.C. § 2252A(a)(5)(B) (possession of and access with intent to view child pornography) are located within the items described in Attachment A.

4.     The statements in this affidavit are based in part on information provided by foreign law enforcement officials, HSI's Child Exploitation Investigations Unit (CEIU), HSI agents in Phoenix, Arizona, and on my

2

investigation of this matter. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2252A(a)(2)(A) (receipt of child pornography) and 2252A(a)(5)(B) (possession of and access with intent to view child pornography), are presently located within the items specifically described in Attachment A.

## IDENTIFICATION OF THE DEVICES TO BE SEIZED AND EXAMINED

5.     The items to be searched, described in Attachment A and hereinafter referred to as "the Devices," are as follows:

    a.  Black i-Phone 7 Model A1778 no visible serial number;

    b.  Silver Samsung Galaxy SD7 Edge bearing serial number R58J327BJNN;

    c.  Apple Silver MacBook Air bearing serial number C1MSJDCNH3QD;

6.     The Devices are currently in the custody of the United States Marshals Service in Greensboro, North Carolina.

3

7.     I submit this affidavit in support of a search warrant application authorizing the seizure and forensic examination of the Devices for the purpose of searching for the items described in Attachment B.

## STATUTORY AUTHORITY

8.     As noted above, this investigation concerns alleged violations of the following:

a.     18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1) prohibits a person from knowingly receiving, distributing or conspiring to receive or distribute, or attempting to do so, any child pornography or any material that contains child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; and

b.     18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) prohibits a person from knowingly possessing or knowingly accessing with intent to view, or attempting to do so, any material that contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means,

4

including by computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## DEFINITIONS

9.    The following definitions apply to this affidavit and Attachment B:

a.    "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors in sexually explicit poses or positions.

b.    "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

5

c.      "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, and mobile phones and devices. *See* 18 U.S.C. § 1030(e)(1).

d.      "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

e.      "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to

6

direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

        f.    "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

        g.    "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

        h.    "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

## BACKGROUND OF INVESTIGATION

    10.    In October 2015, HSI agents in Phoenix, Arizona, began conducting undercover operations on an Internet-based video conferencing application used by persons interested in exchanging child pornography

7

and/or sexually abusing children. This application is hereinafter referred to as "Application A."

11.     Application A is designed for video conferencing on multiple device formats. To use this application, a user downloads the application to a computer, mobile phone or other mobile device (e.g., tablet) via direct download from the company's website. Once downloaded and installed, the user is prompted to create an account. Application A users can invite others to an online meeting "room," which is an online location associated with a 10-digit number where each user can see and interact with the other users.

12.     When a user chooses to enter a specific meeting room, the user enters the 10-digit room number and enters the display name that he wants to use on that specific occasion, which does not have to be the same as the account username. Application A does not require a certain number of characters for a particular display name. Consequently, a user can create a display name with a single special character, such as "#" or a single letter, such as "a."

13.     During a meeting, users can show a live image or video of themselves to other users through the webcam feature. Users may also display the contents of their own computer desktops to the other users in the

8

room. The ability to display their own computer desktops allows users to show videos and photos to other users in the room. Application A also allows users to send text messages visible to all of the users in the room, or private messages that are similar to instant messages sent between two users.

14. Application A permits users to conduct online video conferences for free for a limited number of minutes. Paid subscribers can conduct online video conferences for an unlimited amount of time. Some Application A users with a paid account permit their rooms to be accessed without a password such that anyone who knows the room number can enter and leave the room at any time.

15. Application A maintains IP address logs for each meeting room, which includes all of the IP addresses (and related display names) for each user in a particular room on a specific day and the device that was used by each user. Each user's unique IP address is logged to reflect the time that particular user entered the room and the time the user exited the room. Users can enter and exit the room multiple times, thereby creating multiple sessions within the logs of Application A. In other words, if a room is open and active for one hour, and in that hour, a user enters the room, leaves the room, and then re-enters the room, the Application A IP log records would

9

reflect two sessions for that specific user (entry/exit, followed by second entry) in the same room on that date.

16. On October 15, 2015, November 10, 2015, and December 9, 2015, an HSI agent acting in an undercover capacity and using a device connected to the Internet, signed into an Application A user account and entered an Application A meeting room. Within the room, the undercover agent observed that an Application A user displayed child pornography. The undercover agent was able to record the child pornography and other activity in the room to an undercover device. I have reviewed the recordings of each of these meetings. Each is described in further detail in the following three paragraphs.

a. October 15, 2015, Application A meeting room ████████: The video meeting lasted approximately 39 minutes. My review of the meeting revealed that it was attended by nineteen to twenty-four adult males who I observed masturbating while multiple child pornography videos played within the meeting interface. The child pornography videos displayed included the following: An adult male anally penetrating a 4 to 6 year-old boy, an adult male performing oral sex on a 6 to 9 year-old boy, two 6 to 9 year-old boys playing with their penises, and an adult male touching a prepubescent boy's penis. One of the participants that I observed in the

10

meeting room had the display name of "KCP." I observed the users of display name "KCP" lying together naked in bed. One was a black male and the other was a white male. Both were masturbating while child pornography videos were being displayed within the meeting, including the above-described video of an adult male anally penetrating a 4 to 6 year-old boy. I was able to observe both men's full faces.

      b.    November 10, 2015, Application A meeting room ████████: The video meeting lasted approximately 4 hours and 26 minutes. My review of the meeting revealed that it was attended by approximately twenty-eight adult males who I observed masturbating while multiple child pornography videos played within the meeting interface. The child pornography videos included the following: Prepubescent boys engaged in oral sex with each other, prepubescent boys under the age of 10 anally penetrating each other with their penis, adult male's anally penetrating prepubescent boys with their penis, prepubescent boys masturbating adult males, and prepubescent boys engaged in oral sex with adult males. One of the participants in the meeting room had the display name of "KCP." I observed the user of display name "KCP", a white male, lying in bed masturbating while child pornography videos were being displayed within the

11

meeting, including the above-described video of prepubescent boys engaged in oral sex with adult males. I was able to partially observe the face of the user of display name "KCP" from the eyes down.

     c.    December 9, 2015, Application A meeting room ███████████: The video meeting lasted approximately 28 minutes. My review of the meeting revealed that it was attended by approximately twenty-five adult males who I observed masturbating while multiple child pornography videos played and an image was displayed within the meeting interface. The child pornography included the following: A video of an adult male inserting his finger into a prepubescent male, a video of a 4 to 6 year-old naked boy lying on a naked adult male, a video of a prepubescent male performing oral sex on an adult male, and an image of a toddler boy touching his mouth on an adult male penis. One of the participants in the room had the display name of "PPP." I observed the user of display name "PPP", a white male, laying on a bed naked and masturbating while child pornography videos were being displayed within the meeting, including the above-described video of a prepubescent male performing oral sex on an adult male. I was able to observe the full face of the user of display name "PPP".

12

17. Subpoenas were served on Application A for subscriber and login information related to the meeting activity on October 15, 2015 and December 9, 2015. A review of the results provided by Application A revealed that on October 15, 2015 the display name "KCP" logged into Application A meeting room ███████ from IP address 107.15.226.166 and that on December 9, 2015 the display name "PPP" also logged into Application A meeting room ███████ from IP address 107.15.226.166.

18. A query of the American Registry for Internet Numbers ("ARIN") online database revealed that IP address 107.15.226.166 was registered to Time Warner Cable LLC.

19. On March 11, 2016, a U.S. Department of Justice Administrative Subpoena was issued to Time Warner Cable LLC for the IP address 107.15.226.166 on October 15, 2015 and December 9, 2015. A review of the results for both dates revealed the IP address was assigned to "Keith C. Peele" at a residence in Durham, North Carolina.

20. Records obtained from Application A revealed that IP address 107.15.226.166 was also used to access Application A on or about December 4, 2015 and on or about December 12, 2015. The user chose the display names "ppp" and "Steven Hilliard." The user accessed Application A multiple times

13

using a MacBook Pro 11 with serial number C02P6330G3QC and once with an Apple iPhone. These are not the same devices that I seek authority to search.

21.  A search of North Carolina Division of Motor Vehicles (DMV) records revealed that Keith Charles PEELE resided at the Durham residence. On or about October 26, 2016, representatives of the United States Postal Service informed me that a "Keith C. Peele" was receiving mail at the residence. Having reviewed PEELE'S photograph on file with DMV, the individual that I observed using the display name "KCP" and "PPP" in the "Application A" meetings described above appeared to be PEELE.

22.  On August 23, 2016, the HSI undercover agent, observed an individual he recognized to be PEELE in Application A room ██████████. PEELE was using the display name "Steve." Another user displayed a child pornography video. While the video was playing, PEELE text messaged the room "fucking hot vid man." I have reviewed the recording of the meeting room made by the undercover agent and also recognize the individual to be PEELE.

23.  On November 9, 2016, I, along with other agents, executed a federal search warrant at PEELE'S Durham residence. At the time of entry

14

three people, all individuals renting rooms from PEELE, were located inside the residence. All three renters stated that PEELE was in Germany on vacation and had left a couple of weeks prior. One of the renters stated that PEELE has an account with Application A and recalled that PEELE used the display name "KCP." The renters directed me to PEELE'S master bedroom on the second floor. Located in PEELE'S bedroom was a four-post bed that I had observed in all four Application A videos described above. Also, the color of the wall is the same color as seen in the bedroom in the the videos. Additionally, found in PEELE'S bedroom was an expired passport belonging to "Keith Charles Peele".

24. I conducted a flight records check and determined that PEELE had departed from Raleigh Durham International Airport on October 14, 2016 and arrived on October 15, 2016 at Tegel Berlin Airport in Berlin, Germany. PEELE originally purchased a return airline ticket to Raleigh Durham International Airport for October 23, 2016. PEELE changed the date of his return flight eight times, six after November 9, 2016.

25. I later became aware that, on November 9 2016, an individual accessed an Application A meeting room using display name "Steve" and a MacBook Pro 11 with serial number C02P6330G3QC (not one of the devices I

15

seek authority to search). This is the same device referenced in paragraph 20 above. The IP address used by the individual resolved to an Internet account in Germany.

26. On November 10, 2016, your affiant applied for and received a federal arrest warrant for PEELE for Access with Intent to View Child Pornography, 18 United States Code, 2252A(a)(5)(B).

27. On November 29, 2016, in the Middle District of North Carolina a federal grand jury returned a one count indictment against PEELE for Access with Intent to View Child Pornography, 18 United States Code, 2252A(a)(5)(B).

28. PEELE did not use his return ticket from Germany to the United States.

29. On April 27, 2017, the United States submitted a provisional arrest request for PEELE pursuant to an extradition treaty with Germany.

30. On July 18, 2017, German authorities arrested PEELE outside his apartment in Berlin-Schoneberg, Germany. Two days later, German authorities searched PEELE'S apartment and recovered the Devices (a black i-Phone 7 Model A1778 with no visible serial number, a silver Samsung Galaxy SD7 Edge bearing serial number R58J327BJNN, and an Apple silver MacBook Air bearing serial number C1MSJDCNH3QD).

16

31.     In November 2017, deputies with the United States Marshals Service extradited PEELE to the United States. As part of this process, the deputies took custody of PEELE'S property, including the Devices.

## PROBABLE CAUSE

32.     On April 20, 2017, the HSI undercover agent logged into Application A and entered a meeting room known to be used to share, access, view, and discuss child pornography and child abuse material. Immediately upon entering the room the agent observed that a participant was screen sharing child pornography. The video depicted the hand of an individual of indeterminate age fondling and masturbating the penis of a nude prepubescent male. This video lasted approximately 39 seconds. The agent observed that one of the participants was using the display name "KCP" and believed the individual to be PEELE.[1] I have reviewed a screen capture of "KCP" from the undercover session. The screen capture depicts a white male with his hand on his genitals and his face with a beard from the nose to the chin. During my investigation of PEELE, I have reviewed multiple

---

[1] The undercover HSI agent, based on his experience working Application A for approximately two years, believes that the camera angle suggests that PEELE was using a computer rather than a mobile phone or tablet.

Application A recorded undercover sessions during which PEELE is depicted and nude. I have also reviewed his DMV photograph and multiple pictures of him on his Facebook page. I believe the individual depicted in the screen capture is PEELE because the individual's beard and body are consistent with prior images that I have observed of PEELE.

33.    I am informed by the HSI undercover agent working Application A that individuals who use Application A to view and share child pornography often communicate on Skype, including sharing Application A room numbers that currently contain child pornography. From November 6, 2015 to July 4, 2017, the HSI undercover agent communicated via Skype text message with an individual using the Skype display name "Steve Hill." The undercover agent believes "Steve Hill" to be PEELE. The undercover agent provided me with a video screen capture of the Skype communications which I have reviewed.

34.    The "Steve Hill" Skype profile contains the following information:

Steve Hill
Berlin
NC, United States

| | |
|---|---|
| Skype: | steve74nc |
| Birth date: | Saturday, ██████ 1973[2] |
| Age: | 43 |
| Gender: | Male |
| Language: | English |

The profile also contains a picture of "Steve Hill" who I recognized to be PEEELE based upon my prior review of PEELE'S DMV photograph and Facebook page.

35.    The text communication between "Steve Hill", aka PEELE, and the HSI undercover agent is detailed below. During the communication, the individuals refer to "████." ████ is the true name of Application A.

November 6, 2015:

UC:    R u sexy KCP on ████?

SH:    hey man
       this me

UC:    Awesome. ?I work nights but am on during he day...hit me up if you
       find good perv stuff

---

[2] PEELE'S date of birth is ██████ 1973.

19

SH: will do man, this a fucking amazing cock

UC: Yes...it is...all the Boyz say so...lol

SH: i bet they do. i work at home so can perv during the day as well

UC: Cool...what do u do?

SH: health insurance company...contract neogations

UC: I'm a nite Mgr at an ████ facility

SH: boring as hell but i get to work at home

wow

UC: Hey...get me good rates

SH: i can't imagine an ████ facility

UC: Yeah....in november....before black friday....

SH: fuck man...i have heard stories

and the whole waiting in line to clock in and out

UC: Not for the boss...if ppl didn't try to steal stuff, it would be different

SH: i bet...my ex worked for macy's and the stuff the people try..who work there

and know they are on camera

UC: Yep...stupid is, stupid does...

How young you like...

SH: 0+

UC: Lol....don't discriminate

Same here

SH: i am new to this...only started watching the vids when i slam

so..its all theory

UC: Gotcha....I'm working on a collection....slow goings...you?

20

SH: none..yet...i have a friend that i lets me watch all i want, so i haven't
    had to download..or i ████

    your are showing off now..that fucking ramrod

November 9, 2015:

UC: Headed to work...some perv going on in that same room

SH: hey man...which room:

November 12, 2015:

UC: ██████████ now, buddy

SH: hey man..

November 17, 2015:

UC: Happy Birthday

SH: thanks man.. any good rooms

November 19, 2015:

UC: Sorry, been busy...it's the crazy season at ██████ Hit me up if any
    good ████ go

December 8, 2015:

SH: hey man..how are you doing?

UC: good...you..ive been slammed at work
    any good rooms?

SH: ████████

UC: yeah....its had too many blank cams lately...

SH: u in their now

    some guys are sharing

    i bet work is kicking your ass

UC: I'm working 16 hour days and half our seasonal help are fucking
    thieves...we fire   and charge like 5 to 10 a day at my facility

21

but...lots of hot young guys working....lots of potential!

SH: potential for not stealing or to fuck

One tract mindj

my best friend's husband is ups driver in suburban all and he is getting home at 11 each night

UC: potential for smooth and young!!

SH: nice...would love to lick that big fucking cock after it pumped a load of seed in

one other tight holes

UC: mmmmm...well, I guy I know from Toronto is flying out after the holidays and

we are headed to Rocky point mexico for some yng fun...wink wink...lol

SH: fuck...please remember every detail

i want a fuck by fuck account

UC: you should join us...$1000 gets Friday to Sunday room and toy and food...it's a 3 hour drive from me

SH: going to sex party with 100 guys new years eve..i could go late on the 25 until the 30 th

UC: we are doing late January, early feb....cheaper airfare to phoenix and the toys are usually fresher...haha

SH: searioulsy..i am in late jan/early feb

have passport...and would love to fuck a nice tight one

UC: look at rocky point/Puerto penasco...winter is the off season for the tourist so its cheaper and better..just locals and ppl from cally and az

Hey and they have great cheap seafood..lol!!

22

SH: fuk yes..fuck all night and eat seafood all day...flights out of phoenix is probably

Cheaper

UC: you don't want to fly there...small shitty scary airport..expensive and then you are stuck without a car

December 9, 2015:

UC: "███████████"

kx45012, Tuesday, December 8, 2015 6:53 PM

all cams on in this room...

SH: hey

UC: hey whats up

SH: did we just chat in the ███████████

UC: no...some guy recorded me and plays it back

SH: ok

glad

i send message ...hi

he says that the pic isn't you

UC: yeah...be careful...he is recording people then trying to blackmail

SH: i say no worries because i sometimes put cum lube and pretend my is loaded with cum and put said info on craigslist.    he then said ...whatever

i am not crazy

UC: lol...yeah..its my buddy the cop, right? Or the fbi man i guess... lmao...

SH: oh fuck

UC: ahahahaha

23

SH: well i did say married men

also

UC: so..you will have to tell me how your gngbang party goes

SH: definitely

been to one in the past..got off 2 loads and got 4..

nice trade

UC: sounds like a fair deal

hey...so check out rocky point for that rip down south...

SH: i am serious

UC: yeah, so lst time i went it was $1000 for friday thru sunday...food and
"playthings"...lol

SH: lord

my dick get hards

UC: i know a guy in Yuma that arranges it..they book the room and brings
the party

Favors...just have to be careful..no public displays..have keep all the
fun in the room

SH: limits

?

meaning..i know anal, or oral..but i guess they limit rough
and i am not rough but

UC: well..it is a money making enterprise for them so I imagine if you
break it

you buy it?

how rough do you want to get...i can ask...

24

SH: i like to be a tad forceful...nothing aggressive..but i want to know that i am in charge

UC: oh...yeah..well of course...i just think they don't want blood or broken bones

im going to take a power nap before i return to the madness of ████...think about it...if you want to go, i can drive as i plan on going...just need to be smart and careful

SH: definitely interested. Foreign soil playing with these types of goods, will be thinking with the right head; we do not need an international incident'

December 10, 2015:

UC: any good ooms?

January 6, 2016:

SH: ████████

I: password is orange

UC: shit, im at work!!!! is that a temp or permanent room?

SH: u home?

still going

January 7, 2016:

UC: lol...i was at work...but oh well...is that your room?

January 8, 2016:

SH: hey man..u in a room?

UC: no, just leaving work...anything good?

SH: no..u find anythinG?

UC: some                   one                 sent                 me
https://████████?pwd=drgNdXR12q8%3D

SH: █████████████

     password is boyfucker

UC: awesome..thx

<u>January 11, 2016</u>:

UC: hey man...I will be in ████████ the first week of February...how far is
    that from you?

SH: Hey man, Depends on where in ██ At most, 3 hours
    What part?

<u>January 12, 2016</u>:

UC: ████████

SH: That's about 3.5 hours. Business or pleasure ?

<u>January 14, 2016</u>:

UC: a little of both....some ████████ meetings and hopefully some pervin

<u>January 15, 2016</u>:

SH: ████████████

<u>January 21, 2016</u>:

SH: hey man is it you?

<u>January 25, 2016</u>:

UC: hey what's up? lots of snow? lol  I will be in ██████████████ next
    week

SH: ice

    ice

    ice

    what days? i have to go to asheville NC

UC: i will be there Monday through Thursday...need some yng prvy play!

<u>January 26, 2016</u>:

26

UC: hey... ▮▮▮▮▮▮ wa going this morning..pw: BRUTALPED

SH: thanks man...are you going to be there next week?  I may sneak up there.

UC: yeah...in ▮▮▮▮...we need to either get together for some fun or find a toy!

im staying at the ▮▮▮▮ marriott...near the mall...fair oaks or something like that

SH: yep.  know exactly where it is.  have to be in Asheville on monday..but could be there wednesday night.

January 27, 2016:

UC: that would be awesome...are there any good party spots out there? or we could just Application A together

▮▮▮▮▮ is doing some training for high school kids at george mason college...lots of eye cndy

Hey...my name is ▮▮▮▮ btw

January 28, 2016:

SH: name is keith.  Lots of eye candy

my asheville trip is off so will have more time

hey

January 29, 2016:

UC: cool...we could meet up maybe Wednesday or something and ▮▮▮▮

and prv...lol...im sure we can find a plaything there is a mall by the hotel supposedly

February 2, 2016:

UC: hey man...im here in ▮▮▮▮ freezing my ass off

SH: Hey man,

27

welcome to the east coast

I can probably leave here around 3.

if you are good with me coming

UC: hold...the boss just walked into the meeting

lol...almost got caught skyping...lol

SH: this is me not horizontal jacking my cock (SH sent a pic of himself)

UC: ooohhhh...outdoor man...sexy!

SH: not really, i adore a penthouse view.

i have a baby face so the beard makes me look oldeer

UC: do you hunt? camouflage?

SH: if you look closer there is a black dog on it

https://www.theblackdog.com/

i have never been to Martha's Vineyard, the ex brought it back.

UC: hey...what happended to ur room, did u change the pw?

SH: hey man

May 3, 2017 (Over a year since the prior communication):

SH: hey

July 4, 2017:

UC: hey man...how you been...berlin? I though you ere in the states?

SH: hey, from NC but been in berlin for a month for work

how are you?

UC: pretty good man...I was in the ████ 3 weeks ago for work...just been

traveling a lot for ork...and perving when possible..haha

SH: fuck yeah

and bald cunt

UC: any young is good haha.. how was berlin?

28

SH: lots of syrian refugees undocumented

UC: is that scary or was shit under control?

SH: under control

i have gone over there walked around

UC: well that's good...the news makes it look like terrorists are everjwhere

SH: it's around tiergarten and the Brandenburg gate...i have seen it but haven't done it

a slam gets you a piece of ass

UC: nice!

same in the hague...lots of yng

**you still** ████████**?** [emphases added]

SH: **oh yeah** [emphases added]

UC: I got some good pd room if you want

SH: can you ████ now?

UC: Ive got family over for a cook out and just checked...but I will b e tonight

████████████

PNPERV

SH: fuck yeah, i wan tot hear all the gory details

UC: let me get back to my sisters and mom...lol..i can fill you in on the Netherlands and mxco..

SH: hey

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

36.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on electronic devices. I know that electronic files, or remnants of such files, can be recovered months or even years after they have been downloaded onto a storage medium or electronic device, deleted, or viewed via the Internet. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a device, the data contained in the file does not actually disappear; rather, the data remains on the storage medium or electronic device until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the storage medium that is not currently being used by an active file – for long periods of time before they are overwritten.

37.    As described in Attachment B, this application requests permission to locate not only electronically stored information that might serve as direct evidence of the federal criminal statutes cited herein, but also forensic electronic evidence that establishes how the items described in Attachment A were used, the purpose of their use, who used them, and when.

30

There is probable cause to believe that this forensic electronic evidence might be on the items described in Attachment A because:

a.  Data on a computer or electronic device can provide evidence of a file or application that was once on the electronic device but has since been deleted or edited, or of a deleted portion of a file or application (such as a paragraph that has been deleted from a word processing document).

b.  Forensic evidence on an electronic storage device can indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on an electronic device that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.

31

Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how an electronic device works. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how an electronic device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on the device.

38. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the items described in Attachment A consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the items, that might expose many parts of the items to human inspection in order to determine whether they contain evidence as described by the warrant.

39. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

32

## CONCLUSION

40.     Based on the foregoing, I submit that there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that the contraband, property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B, are located within the items described in Attachment A. I respectfully request that this Court issue a search warrant, for the items described in Attachment A, authorizing the search for and seizure of the materials described in Attachment B.


M.C. Glenn Covington
Special Agent
Homeland Security Investigations


Sworn and subscribed before me this 20th day of November 2017.


L. Patrick Auld
United States Magistrate Judge
Middle District of North Carolina

33